JOYNFS, J.
The first question which arises on this record is, whether the Circuit court erred in overruling *the demurrer to the indictment. The ground of demurrer is not stated, but it is supposed to have been founded upon the manner in which the time of the offence is laid.
The indictment which was found in August 1867, charges the offence to have been committed “within two years last past” (two years being the limitation to prosecutions under the revenue laws), and no other time is laid. The term of two years before the finding of the indictment covered a considerable period before the enactment of the statute creating the offence, so that, non constat, but that the offence charged was committed before the' statute was passed. We think that such a mode of laying the time would have been fatal on demurrer, according to the rules of pleading at common law. 1 Chitty Cr. Uaw 223; Wharton’s Precedents 8; People v. Miller, 12 Calif. R. 291, and cases cited. The case is not like that of Nichols and Janes, 7 Gratt. 589. Under an act which went into - operation on the 31st day of May 1848, the indictment alleged that the defendants did, on the 1st day of May 1848, and from thence up to the 8th day of April 1849, not being married to each other, lewdly and lasciviously cohabit together. Though the 1st day of May 1848 was a time, before the statute went into operation, the unlawful cohabitation, which was a continuous offence, was alleged to have continued from that time to a day long after the statute took effect. The General court held the indictment good on demurrer.
According to the rules of criminal pleading at common law, the allegation of time, except where time is the essence of the *303 offence, was the merest formality, and served no useful purpose. It did not limit the Commonwealth in its proof to the time specified, and, therefore, did not serve to notify the accused of the precise act for which he was prosecuted. And whatever time might be laid in the indictment, it was incumbent on *the Commonwealth, in every case, to prove that the act charged was committed at a time when it was an offence against the la"w, and within the period of limitation, if any. The Code (ch. 207, sect. 11) provides, that no indictment shall be quashed or deemed invalid “for omitting to state, or stating imperfectly, the time at which the offence was committed, where time is not the essence of the offence,” &c. &c. &c. “or for the insertion or omission of any other words of mere form or surplusage.” The provisions of this section were designed to get rid of cumbrous and useless technicalities, and ought to receive a liberal construction. If the statement as to time in this case can be regarded as an “imperfect” statement within the meaning of the statute, it is cured by the express words of the statute. If it cannot be regarded as an “imperfect” statement, then it may be rejected as surplusage, as the indictment would be good without it. And as the statement of time may be omitted altogether, it would seem that no mode of stating the time of an offence can now vitiate an indictment.
The Circuit court did not err, therefore, in overruling the demurrer to the indictment.
The act of April 19th, 1867 (sec. 22), provides that “no person shall, without a license authorized by law, canvass any county or corporation in this Commonwealth, or any part thereof, for the purpose of buying or offering to buy, or shall actually buy, any matters of subsistence for man or beast, or for any beverage or for any clothing, or for any materials of which clothing is made.” This provision is copied from the act of February 13th, 1866, except that the words, “or shall actually buy,” are not in the latter act. The act contains an exception of purchases made by a party for his own use, or for the use of his family. The indictment charges in the first count, that the plaintiff in error “did, without a license authorized by law, unlawfully ^canvass the county of Henrico for the purpose of buying and offering to buy, and did actually buy, certain matter of subsistence for man, to wit: Cattle, sheep and hogs, not for his own use or the use of his family, ’ ’ &c. The facts certified sustain all the allegations of this count, and show that the offence was committed after April 19th, 1867_. The other counts need not be noticed, as upon them there was a verdict for the defendant. It was proved that the defendant was a butcher, doing business as such in the city of Richmond, and that he purchased the live stock in the indictment mentioned, for the purpose of slaughtering them and selling them as butcher’s meat in the Richmond market, and that he did slaughter them and sell the meat accordingly. The court instructed the jury, in substance, that the facts that the defendant was a butcher and that he bought the animals and sold the meat prepared from them in the course of his business as a butcher, did not exempt him from the penalties of the act; to which the defendant excepted. After the verdict, the defendant moved the court to set it aside. The motion was overruled; and the defendant again excepted.
The language of the act is general, and embraces all persons except those who buy for their own use or for the use of their families. It is insisted, notwithstanding, that the act could not have been intended to apply to butchers buying live stock to supply meat for their own stalls, and that it should be so construed as to except them. One of the reasons advanced in support of this position is, that butchers are not subject to any tax upon their general business,, from which it is argued that the legislature could not have intended to tax one of the usual modes of obtaining meat for carrying on their Business. But the offence charged and proved against the defendant in this case, was not simply the buying of stock, but canvassing the county for stock and buying it. The fact that the legislature saw fit not *to impose any tax upon butchers as such or upon their general business, has no tendency to show that it did not intend to include them along with all other persons, in language broad enough to comprehend all, in reference to the practice of canvassing, which is not an essential part of a butcher’s business, nor an essential means of carrying it on. Indeed, the legislature may have intended to include them, for the very reason, that they paid no tax on their general business. The language of the act is broad enough to include all persons whatever, who do the acts described, and we cannot make an exception in favor of any class, upon mere speculation and conjecture, however plausible.
It is further insisted that the purchasing of live stock by a butcher is not embraced by the provision we are considering, because the 60th section of the act of April 20, 1867 (Sess. Acts 870), provides, as it is-said, for every case of dealing in horses, mules, asses, jennets, cattle, sheep, and hogs, or any of them, and shows how far the legislature intended to impose taxes upon the dealing in such animals, or any of them. But that section applies only to dealing in the living animals, and to two sorts of such dealing, namely, selling for others on commission or for profit, and buying and selling for profit. The imposition of a tax upon such dealings in cattle, sheep and hogs, does not indicate that when the legislature imposed a tax upon the-practice of canvassing for matters of subsistence and buying them, it meant to except those who thus buy cattle, sheep and hogs. The tax imposed upon those who-buy and sell live stock for profit, and the tax imposed upon canvassing for matters. *304 of subsistence, apply to different sorts of business, and reach different classes of persons.
Thus i-t is argued that cattle, sheep and hogs alive, do not fall within the description of “matters of subsistence forman.” It is insisted that these terms in *the statute embrace only such articles as are themselves food, and not such also as are only materials from which food is made. We do not see any foundation for this construction. The main object of the legislature seéms to have been to derive revenue from a practice which had become prevalent in many parts of the State. The words “matters of subsistence” seem to have been designed to embrace a great variety of things, which could not be enumerated or more specifically described. If the object had been to embrace merely such things as are used as food without a change of their form, it would have been easy to say so by apt and familiar words. If the provision is confined to such articles as are themselves food, or as are consumed in the form in which they are bought up by those who canvass the countrjq it will embrace a very limited number of articles. It will embrace butter, milk and cheese, but it will not embrace poultry, fish, vegetables or eggs, any more than cattle, sheep or hogs. It will not embrace a great majority of the articles which are bought up by the huckster, any more than those which are bought up by the butcher. Such a limited construction, besides not being required by the language, would, in a great measure, defeat the object and policy of the law. We think that the words “matters of subsistence for man,” as used in the act, comprehend all articles or things, whether animal or vegetable, living or dead, which are used for food, and whether they are consumed in the form in which they are bought from the producer, or are only consumed after undergoing a process of preparation, which is greater or less according to the character of the article.
Nor do we perceive any ground for holding that the act applies, as contended by counsel, only to those who “buy things as they sell them in kind.” The act, by its terms, applies to all who canvass and buy, without any reference to the mode in which they sell what they *buy, and without any reference to the purpose for which they buy, with an exception only of those who buy for _ their own use or the use of their families. 'We are not authorized to introduce another exception by construction, without the clearest proof that it was the intention of the legislature to make it.
We do not think it necessary to discuss other views submitted by counsel on this branch of the case. They have all been duly considered, but they do not affect the result. We are of opinion, that the County court did not err in the instruction given to the jury, or in refusing to set aside the verdict as contrary to the law and the evidence.
The County court did not err in allowing the jury to amend their verdict. The jury had not been discharged or the verdict recorded, and it is familiar practice in such a case, to allow the jury, to amend their verdict. Blackley v. Sheldon, 7 John. R. 32; Commonwealth v. Gibson, 2 Va. Cas. 70; 1 Chitty Cr. Law 648.
There is a formal error in the judgment in this, that there is no judgment for the defendant on the second and third counts, upon which he was found not guilty. The judgment will be amended in that respect, and as amended it must be affirmed.
The other judges concurred in the opinion of JOYNfiJS, J.
Judgment amended and affirmed.