# JUNE TERM, 1895.

## WHEELING.

### STATE v. COBBS.

#### Submitted June 11, 1895—Decided June 19, 1895.

1. INSTRUCTIONS—MURDER IN FIRST DEGREE—JURY.
   It is not error for a court to omit to instruct a jury that it may punish murder in the first degree with either death or confinement in the penitentiary, unless asked to do so.

2. INSTRUCTIONS—JURY.
   It is error to refuse to do so when asked, though not asked until the jury announced its verdict, but before its discharge.

3. INSTRUCTIONS—TIME FOR INSTRUCTIONS—RULE OF COURT.
   The law does not fix any time for instructions. The court may fix it by rule.

4. JURY—VERDICT.
   A court may, for good reason, return a jury to its room to further consider and amend or alter its verdict, at any time before a verdict is received by the court and the jury discharged.

5. INSTRUCTIONS—SPECIFIC INSTRUCTIONS.
   A court, though asked, is not bound to instruct a jury generally as to the law of the case. Instructions as to the specific law points ought to be asked. A court may, without request, if it think the interest of justice and a fair trial call for it, instruct the jury in matter of law, the instruction being sound in law and relevant to the evidence; but it is not bound to do so unless asked; but, if asked to give such proper specific instructions, it must do so.

6. INSTRUCTIONS—TIME FOR INSTRUCTIONS—WAIVER.
   The court suggests privately to counsel of prisoner the prudence of instructing the jury of its power to punish murder in the first degree either with death or by confinement in the penitentiary, and counsel says that he prefers to take chances rather than call the jury's attention to that law at that time. This does not estop the prisoner from asking such instruction later, even after the jury has announced a verdict of murder in the first degree, but before it is received or the jury discharged.

7. JURORS—VERDICT—AFFIDAVIT OF JURORS.

Affidavit of jurors that they were ignorant of the law that it is with a jury to say whether murder in the first degree shall be punished with death or confinement in the penitentiary can not be read to impeach the verdict.

8. JURORS—VERDICT—AFFIDAVIT OF JURORS.

As a general rule, affidavits of jurors to impeach their verdict can not be read.

J. W. HALE for plaintiff in error, cited Code, c. 159, s. 19; 2 Thomp. Trials, pp. 1559, 1561, 1693; Sacket Instr. (2d Ed.) § 5; 9 Leigh 678, 681; 4 Leigh 745; 35 W. Va. 81; 14 Gratt. 613, 630, 632, 633; 6 Gratt. 219; 31 W. Va. 390; 19 Gratt. 813; 1 Bish. Cr. Prac. § 1003.

ATTORNEY-GENERAL T. S. RILEY for the State, cited 7 Ired. 251; 4 Gratt. 425; 31 W. Va. 370; 20 W. Va. 214; Id. 32; 39 W. Va. 427; 38 W. Va. 568.

BRANNON, JUDGE :

Peter Cobbs was sentenced to be hanged, for the murder of David Adams, by the Criminal Court of Mercer county, and then applied to the Circuit Court of that county for writ of error, which was refused, and then he obtained a writ of error from this Court.

It is said that the Criminal Court erred in failing, on its own motion, without request, to instruct the jury that if they should find the prisoner guilty of murder in the first degree, they could either find that he be sent to the penitentiary for life or punished with death.

Under the criminal practice in Virginia, and also in West Virginia, until the Code of 1868, when a person was charged with felony, the procedure of the trial began with a formal arraignment, proclamation by the sheriff and charge by the clerk. The charge of the clerk instructed the jury what they should do under the law in case they found the defendant guilty, as, for instance, what punishment they should impose, where the manner and degree of punishment were committed to them by law. This charge was under the eye of the court, was considered as an instruction by the court, and if erroneous, was ground for reversal. See its form, 3

Rob. Prac. (old) 175. See *Allen's Case*, 2 Leigh 727. Our Code, s. 2, c. 159, abolishes such arraignment, sheriff's proclamation, and clerk's charge.

I think that the duty of informing a jury as to its power to elect between punishment by death or confinement in the penitentiary in murder cases would have a been part of the clerk's charge under the former practice, and that its omission would be error, if that practice still prevailed; but such practice having been dispensed with, this matter is, like any other matter of law touching the trial, the subject of instruction, and governed by the law relating to instructions. I do not think that this power of election between the two punishments has anything about it so peculiar as to distinguish it from other rights of the defendant under the law, so as to make it incumbent on the court to give an instruction of its own motion, and render its omission error. A court is not bound, even on motion, to instruct the jury generally on the law of the case. *Womack* v. *Circle*, 29 Gratt. 192, par. 8. Then why so as to this matter? 2 Thomp. Trials, § 2188, does say that in criminal cases it is the duty of the judge to advise the jury as to the punishment which the law imposes on the crime, so they may properly assess the penalty according to the magnitude and character of the crime, and cautiously adds, "And it is supposed that a failure to do this, even where not requested, would, in most jurisdictions, be ground of reversing the judgment." Doubtless the advice here given by Judge Thompson to courts to see that juries do not act in the vital matter of punishment in obscurity and confusion of mind is judicious in all jurisdictions, and doubtless its observance is essential and indispensable in all jurisdictions, as in England and many of the American states, where the judge "sums up" the case, as it is said, that is, delivers a charge, in which he covers the whole ground of the case, giving his opinion on law and fact; and this charge is necessary, and must be full in its exposition of the law of the case. 1 Bish. Cr. Pr. §§ 976, 979, 980; Whart. Cr. Pl. §§ 709, 711. This charge is a material part of the trial. But in the Virginias this "summing up" or charge is unknown. Our practice is widely different. Under our practice the

judge must not state the evidence, or discuss or give or in-timate his opinion upon it. If anything drops from him, even casually or inadvertently, in giving instructions or otherwise, indicating an opinion on the weight or effect of the evidence or the credibility of a witness, it is generally ground for reversal. *Dejarnette's Case,* 75 Va. 867; *Whitelaw's Ex'r* v. *Whitelaw,* 83 Va. 40 (1 S. E. Rep. 407); *State* v. *Hurst,* 11 W. Va. 54; *State* v. *Thompson,* 21 W. Va, 741; *State* v. *Greer,* 22 W. Va. 800; *State* v. *Sutfin, Id.* 771. Thus, in this state, no duty rests on the judge to instruct on the general features of the case, law or fact. I have said that the matter of instructing as to punishment falls under the law of instructions. Under that, it was not the duty of the judge, unasked, to give the instruction. We are not discussing the question whether it is error for a judge, without request by either side, to give instructions, as in *Gwatkin's Case,* 4 Leigh 678. I do not doubt that as held in *Blunt's Case,* 4 Leigh 689, the court may properly instruct the jury on a question of law, when, in its opinion, justice requires such interposi-tion, though it be not asked by either party. But the ques-tion in point now is whether a court is bound, without re-quest of specific instructions, to give them. It is clearly not so under our practice. *Dejarnett's Case,* 75 Va. 877; *Rosen-baums* v. *Weeden,* 18 Gratt. 785; 4 Minor 747; *State* v. *Caddle,* 35 W. Va. 73 (12 S. E. Rep. 1098). The cases of *Kitty* v. *Fitzhugh,* 4 Rand. (Va.) 600; *Brooke* v. *Young,* 3 Rand. (Va.) 106, and *Womack* v. *Circle,* 20 Gratt. 192, holding that a party must ask instructions on specific points, and that even when asked the court is not bound to instruct generally on the law of the case, logically negative the claim that it is error for a court not to instruct when not asked. The party must ask specific instructions.

But this does not end or settle the prisoner's right touch-ing this matter; for, when the jury came in with a simple verdict of guilty of murder in the first degree, without any finding that he be punished by confinement in the peniten-tiary, he asked the court to tell the jury that it had a right to make such addition to its verdict, which the court refused to do. This solicited instruction certainly propounded the law

correctly. It is a matter of clear and important right that a party has right to ask a proper instruction, and have it given, and it is error to refuse it. *Wheeling Bridge Co.* v. *Wheeling & B. Bridge Co.*, 34 W. Va 155 (11 S. E. Rep. 1009). Here is an instruction asked, properly stating the law, vitally important to the defendant, as on it perhaps hung his life, refused. This is all you can make out of it, so far, and its refusal is error, unless, under the circumstances, it can be justified. Strong reason is called for, in the very nature of the case, to warrant this refusal. The attorney-general says it was asked too late. It was not asked, as would have been proper, before the retirement of the jury; but when the jury came into court, and after its verdict had, by direction of the court, been read aloud, but before it was received by the court, while the jury was still present, and before its discharge, the instruction was asked. The object of the law was to give a fair trial. The law does not absolutely fix any time for giving instructions. *Gwatkin's Case*, 9 Leigh. 678. *Gibson's Case*, 2 Va. Cas. 70, holds that not until the court has received for record the verdict is it perfected, and until then it may be amended. I think while the jury is present and before discharge, the verdict may be amended. So held in *Sledd's Case*, 19 Gratt. 813. Where is the sound reason against giving a jury a simple, isolated instruction upon a single point, as here proposed, in a matter so vital to the prisoner, and sending them back to their chamber? The court virtually gave an instruction to ,and sent the jury back, and they amended their verdict, in *State* v. *Davis*, 31 W. Va. 390 (7 S. E. Rep. 24.) After such instruction the jury should be sent again to their room for further consideration. I know that in *Jarrett* v. *Stevens*, 36 W. Va. 445 (15 S. E. Rep. 117) and *Tully* v. *Despard*, 31 W. Va. 973 (6 S. E. Rep. 927) where instructions have been submitted after the retirement of the jury, and refused because offered too late, this Court held that it would not for that cause reverse, unless it affirmatively appears that the court manifestly abused the large discretion vested in it in such case. This leaves to the appellate court considerable discretion. Abuse of discretion as used in those cases, does not only mean corrupt ac-

tion, but misuse or erroneous exercise of that discretion. It seems to us that in the case in hand is a plain instance of one calling for reversal. Here is an instruction asked, unquestionably correct in law, upon a statutory provision, and upon a single proposition admitting of no two adverse opinions, calling for no qualifying instruction or further argument of counsel, working no surprise to the state, doing it no shadow of injustice or harm, tending to promote and not to hinder a fair trial, and so vital to the prisoner that upon it possibly depended his life. If we do at all review the exercise of the discretion by the Criminal Court, we must say that we see no adequate reason for the refusal of the request. This is not a civil case, like the cases above referred to, but one involving life, and a discretion in such a matter in both courts should lean in favor of the accused. It does not appear that any fixed court rule prescribed the time when the instructions should be asked, and even if there was such a rule, the peculiar circumstances of this case would call for a departure from it. *Organ Co. v. House,* 25 W. Va. 64. The nature of the instruction asked—its peculiar nature—rendered it proper at any time before the jury's discharge, if asked.

Three jurors, by affidavit, say that they thought that if the jury found a verdict of murder in the first degree it was with the court to determine whether the accused should suffer death or be confined for life in the penitentiary, and not their duty to determine that matter, and that if they had known it was the province of the jury to determine between those two punishments they would have found in favor of punishment by confinement in the penitentiary, and that thus they acted in mistake of law, while three other jurors, by affidavit, say that the right of the jury to elect between the two modes of punishment was fully discussed, asserted, and explained in the jury room, before all the jurors, and that it was explained there that under the verdict found the prisoner would suffer death. Here is a strange contradiction. It is almost inconceivable that it should exist. It is a signal illustration of the wisdom of the rule of law that the evidence of jurors shall not be received to impeach their verdict. If the first affidavit

is read, it makes a strong case for the exercise of the power of the court to grant a new trial. Can it be read? I do not think these affidavits on either side can be read—not to impeach the verdict by showing ignorance or mistake of law. *Harnsbarger* v. *Kinney*, 6 Gratt. 287; *Bank* v. *Waddill*, 31 Gratt. 469; *Reynolds* v. *Tomkins*, 23 W. Va. 229; *Probst* v. *Braeunlich*, 24 W. Va. 356. If jurors can be thus allowed to overthrow their verdict, what verdict might not be overthrown? How wide open would be the door to tampering with and bribing jurors? Is every single juror to be allowed to say he misunderstood the law? Though affidavits of jurors will not be received to impeach their verdict, they are received to support it to a very limited extent only where facts come to the attention of the court, *prima facie* invalidating the verdict, which is not the case here. *State* v. *Harrison*, 36 W. Va. 729 (15 S. E. Rep. 982.) There may be instances of hardship under the rule, but public policy favors the rule, and it can not regard individual instances of hardship. The rule is thus broadly stated in 2 Thomp. Trials, § 2618, and is fully sustained by authority cited: "Upon grounds of public policy courts have almost universally agreed upon the rule that no affidavit, deposition, or other sworn statement of a juror will be received to impeach the verdict, to explain it, to show on what grounds it was rendered, to show mistake in it, or that they misunderstood the charge of the court, or that they otherwise mistook the law, or the result of their finding, or that they agreed on their verdict by average or by lot." See many authorities collected in 5 L. R. A. 523, to case of *Bartlett* v. *Patton*, 33 W. Va. 71 (10 S. E. Rep).

Another circumstance may be summoned to sustain the action of the court, namely: Counsel agreed not to argue the case, but to state what they conceived to be the law of the case, and, nothing having been said by counsel on either side as to the right of the jury to find for punishment by confinement in the penitentiary, the court called counsel for the prisoner to his desk before the jury retired, and called his attention to that fact, and the counsel remarked to the court that he would rather take chances than call the jury's attention to that law at that time. This was a private con-

versation between the judge and the counsel, practically not in the presence of the prisoner, and not heard by him, and it was qualified as to time. Is it a waiver by him? Is it an estoppel against his right afterwards to ask the court to tell the jury as to their right to impose either punishment? I do not think counsel's authority to bind the prisoner would be carried by a court so far. Not a whisper had been made by judge or counsel about this right of the jury to impose either punishment, which I think prudence suggests should be done by the court, and it would be very, very rigid to say that because the counsel, without the prisoner's knowledge, took this lottery of chance, when it failed, the prisoner would be inexorably bound by it in a matter of life and death. A court need not, unless asked, give instructions. A prisoner may undoubtedly waive them; but he has a right to ask them. Here it is not a question of waiver, but it is a question of whether he could, before it was too late, ask a proper instruction, or whether his counsel could for him recant the waiver which he had privately made. I think he could have retracted it had he known of it or made it himself.

The point that there was a separation of the jury arising from the manner in which they were kept over night is made by counsel, but not urged. There was no legal separation. There is nothing of importance or novelty in this case upon this question, which has been so much discussed in former cases, calling for further discussion. *Tompson's Case* 8 Gratt. 637; *State* v. *Harrison,* 36 W. Va. 729 (15 S. E. Rep. 982); *State* v. *Belknapp,* 39 W. Va. 427 (19 S. E. Rep. 507).

Reversed and remanded for new trial.