## CAVE et al. v. OGDEN CITY et al.

No. 3086.  Decided November 28, 1917.  (169 Pac. 163.)

1. MUNICIPAL CORPORATIONS—STREET PAVING—PROTEST. Under Comp. Laws 1907, section 273, providing that objections by owners of two-thirds of the foot frontage on a street to be paved deprive the city of jurisdiction to proceed with the improvement, and in spite of section 266, requiring railroad companies to pave portions of their right of way, a railroad company owning the right of way across which a street is to be paved may validly protest against the improvement.[1]  (Page 168.)

2. MUNICIPAL CORPORATIONS — STREET PAVING — OBJECTIONS — WHO MAY OBJECT. Where the title to land is in the county under a tax deed, the individual prior owner was not competent to protest a projected paving.  (Page 170.)

3. MUNICIPAL CORPORATIONS — STREET PAVING — OBJECTIONS — WHO MAY OBJECT. A corporation occupying certain frontage owned by individuals could not protest a projected paving.  (Page 170.)

4. MUNICIPAL CORPORATIONS — STREET PAVING — OBJECTIONS — WHO MAY OBJECT. Comp. Laws 1907, section 273, providing that the council shall be deemed to have acquired jurisdiction to order paving, unless written objection signed by the owners of two-thirds of the front feet are filed, being silent upon who may protest, the section must be held to contemplate protests only by owners of legal title.  (Page 170.)

Appeal from District Court of Weber County, Second District; *Hon N. J. Harris,* Judge.

Suit by George F. Cave and others against Ogden City and others.

Decree for defendant.  Plaintiffs appeal.

AFFIRMED.

*Skeen & Skeen* for appellants.

*E. T. Hulaniski* and *John C. Littlefield* for respondents.

THURMAN, J.

---

[1] *Armstrong* v. *Ogden City,* 12 Utah 476, 43 Pac. 119.

The facts in this case are not in dispute.  The only question is:  Did the defendant Ogden City acquire jurisdiction to create the special paving district, described in the complaint, and levy the necessary tax for paving the street, against the written protest filed by the plaintiffs as abutting owners upon the street to be paved?  The notice of intention to create the paving district was duly published as required by law on the 24th day of May, 1916, and required protests to be filed on or before June 17, 1916.  Within the time limited plaintiffs claiming to be the owners of more than two-thirds of the frontage on said street duly filed their protests.  Comp. Laws Utah 1907, section 273, declares the procedure in such cases, and reads as follows:

"In all cases before the levy of any taxes for improvements provided for in this chapter, the city council shall give notice of intention to levy said taxes, naming the purposes for which the taxes are to be levied, which notice shall be published at least twenty days in a newspaper published within such city. Such notice shall describe the improvements so proposed, the boundaries of the district to be affected or benefited by such improvements, the estimated cost of such improvements, and designate a time when the council will consider the proposed levy.  If, at or before the time so fixed, written objections to such improvements signed by the owners of two-thirds of the front feet abutting upon that portion of the street, lane, avenue, or alley to be so improved, be not filed with the recorder, the council shall be deemed to have acquired jurisdiction to order the making of such improvements."

The total frontage of property abutting on the street to be paved in the entire district was 3,862.6 linear feet.  It therefore required the owners of 2,575.6 linear feet of frontage, or two-thirds of the entire frontage, to file their protests within the time limited in order to prevent the city from acquiring jurisdiction.  Protestants claiming to own 2,631.4 front feet filed their protests within the time, but the defendants, for one reason or another, eliminated and rejected a large number of the protests filed reducing the amount to a number considerably below the requisite two-thirds.  Defendants, assuming the

city had acquired jurisdiction, immediately advertised for bids for the construction of the work, and were taking steps to accomplish the same when plaintiffs, representing all the protestants, commenced this action to enjoin the prosecution of the work.

The trial court found the issues in favor of the defendants. Plaintiffs appeal, and present several questions for consideration, but for convenience the same may be grouped as follows: (1) It is contended that the entire frontage in the paving district as estimated by the defendants improperly includes certain property owned by a railroad company and thus augments the entire frontage, thereby increasing the number of protests required to prevent the city acquiring jurisdiction. (2) It is also contended by appellants that the city improperly rejected certain protests in which the protestants' ownership of the property was disputed. (3) That the city improperly rejected a protest representing corporate property, the city claiming that the protest was without authority of the corporation. (4) Finally it is contended by appellants that a cotenant of property owned in common has the right to protest on behalf of all the common property, and that the city improperly limited certain protests by cotenants to their pro rata share of the property and excluded the remainder from the count. The trial court having sustained the defendant's contention in the matters above enumerated and judgment being entered accordingly, constitutes, in substance, the errors complained of.

The specific objection made by appellants to including the frontage of the railroad company in computing the entire frontage of the proposed district is based upon the fact that substantially 40 feet on each side of the street to be paved, making 80 feet in all, is within the railroad company's right of way and occupied by its railroad tracks. This contention is made because of the provisions of Comp. Laws 1907, section 266, which requires railroad companies at their own expense to pave such portions of their right of way as are above described. It is urged by appellants that their contention on this point is sustained by the reasoning of this

court in the case of *Armstrong* v. *Ogden City*, 12 Utah, 476, 43 Pac. 119, in which it was held that in estimating the entire frontage certain public property was improperly included within the proposed paving district. As public property owned by the United States, the states or any of their municipalities in their governmental capacity, is, by the state Constitution, exempt from taxation, while railroad property is not exempt, but is taxed the same as other private property, we fail to see the analogy between the point in question here and that raised and determined in the Armstrong Case. In the absence of authority to sustain appellant's contention, and none has been presented, we are unable to see why any distinction should be made between railroad abutting property, whether occupied by tracks or otherwise, and other private property fronting on the street. Certainly the statute we have quoted, section 273, supra, makes no such distinction, and for the defendant city to have made such distinction in determining its jurisdiction would have been to fly in the face of the plain unequivocal language of the statute which contemplates that any owner of property fronting on the street may file his protest against the contemplated improvement. Appellants assume, without citing authority or giving a substantial reason, that a railroad company would have no right to protest in such cases, and therefore had no right to silently acquiesce. But why should not a railroad company owning lots abutting on a street included within a proposed paving district have the right to file its protest the same as any other private owner of property fronting on a street? The fact that it is required at its own expense to pave the space within a street covered by its tracks and two feet additional on each side at the time the other portions of the street within the district are being paved certainly does not justify the distinction appellants contend for. The railroad company as owners of abutting property has the same right to resist the making of an improvement that will entail upon it an extraordinary expense as has any other owner of private property abutting on the street, for, as above suggested, the expense to be entailed upon the railroad company only occurs when an expense for a similar

purpose is likewise entailed upon every other private owner fronting on the street. Why should not a railroad company have the same right to resist the imposition of a financial burden or consent thereto as other property owners similarly situated? In this case we fail to see any reason for the distinction, for here the railroad company is in the same position relatively as other owners of abutting property, and whether its property be covered with tracks, warehouses, or depots, or is entirely vacant, in our judgment, does not alter the case. Whether it protested or acquiesced in the proposed improvement, if the city acquired jurisdiction it would have been liable to pay its proportion of the assessment just the same as other property owners in the district. *City of Ludlow* v. *Trustees*, 78 Ky. 357; *Missouri, K. & T. Ry Co.* v. *Tulsa*, 45 Okl. 382, 145 Pac. 398. If, therefore, the railroad company is liable for its proportion of the assessment in the event that the city acquires jurisdiction, certainly this is a formidable reason why its vote should be counted in determining the question of jurisdiction.

For the foregoing reasons, we are of the opinion that the frontage of the railroad company was properly included in estimating the entire frontage to be included in the district.

The protests of some of the protestants were rejected by the defendants in determining the question of jurisdiction for the reason that the protestants did not appear to be the owners of the property represented. Emily Perry Shanks, one of the protestants, assumed to represent 27.5 feet of 2, 3, 4 frontage, but the protest was rejected because the property represented had been conveyed to Weber County by tax deed in 1915. The legal title to the property was in Weber County, and nothing was produced in evidence, either before the city council or the court, to in any manner modify its effect or impeach its validity. We think this protest was properly rejected. The Mutual Creamery Company protested 66 feet of frontage. It appears from the record that at the time limited for the reception of protests, Eugene W. Whitney and Alfred H. Ensign held the record title to the 66 feet in question. Appellants in their brief admit that

the protest was rejected because the property was owned by Whitney and Ensign. This protest was also rejected, and we think properly so because the statute expressly limits the authority to protest to owners of the property. The statutes of some of the states expressly provide what constitutes an owner for such purpose, and in some cases permits persons having only equitable interests to protest; but our statute being silent on this point, we cannot construe it otherwise than that it contemplates owners of the legal title. Besides this, the fact that the assessment becomes a lien on the property renders it absolutely necessary that the owner of the legal title should have a voice in determining whether or not the lien should be created. Different questions arise as to other protests that were filed and rejected. In several instances one cotenant, of many, of common property signed protests, and the question arose as to whether such protests should represent the whole property or only the pro rata share of the cotenant protesting. The defendants allowed the cotenants' pro rata share and rejected the remainder. In another instance an individual assumed to protest for and on behalf of a corporation owning frontage in the district. It did not appear that he was authorized to act for the corporation, but it was stipulated at the trial that the corporation would have ratified his act if the question had been raised. This protest was also rejected. In another instance a party who filed a protest afterwards requested the city engineer to withdraw it. The record is not clear as to whether or not this protest was rejected. But as to all of these questions we deem it unnecessary to express an opinion.

As before stated, the entire frontage in the district is 3,862.6 linear feet; necessary to prevent the city acquiring jurisdiction 2,575.6 feet; total protests filed, 2,631.4 feet, or 55.8 feet in excess of the number required. We have already shown that 27.5 linear feet protested by Emily Perry Shanks and 66 linear feet protested by the Mutual Creamery Company were properly rejected and not counted. With these amounts deducted from the protests filed, we have less than two-thirds protesting against the proposed improvement. The protests

not considered are therefore immaterial in view of the conclusion we have reached.

The judgment of the trial court is affirmed. Respondents to recover costs.

FRICK, C. J., and McCARTY and CORFMAN, JJ., concur.

GIDEON, J., being disqualified, did not participate in this case.