STATE OF WEST VIRGINIA *v.* RUBEN W. CHANEY

(No. 8370)

Submitted April 15, 1936.   Decided June 16, 1936.

*C. C. Chambers* and *R. H. Casto,* for plaintiff in error.

*Homer A. Holt,* Attorney General, and *Kenneth E. Hines,* Assistant Attorney General, for the State.

LITZ, JUDGE:

Defendant, Ruben W. Chaney, was tried, convicted of murder in the first degree and sentenced to death, in the

circuit court of Logan County, upon an indictment charging him with the murder of Henry Napier.

Ruben Chaney, Henry Napier, Dixie Chaney (sister of defendant and paramour of Napier), and Lindsey Blevins lived in a four-room house at Lundale, Logan County. Ruben paid the rent; he and Henry furnished the groceries; and Dixie performed the house work. Lindsey, who was estranged from his wife, "boarded" with the household. Ottis Chaney, a brother of Ruben, lived next door and Delphia Blevins, wife of Lindsey, "stayed" at the same place.

The evidence of the state shows that on Sunday afternoon, July 14, 1935, while Ottis, Henry and Lindsey were intoxicated, Ottis threw a glass (of some sort) against the house in which the Chaneys and Napier resided, and an altercation between him and Henry ensued; that Ruben, who was at the home of Ottis, being informed of the trouble, returned to his house and found Henry and Ottis in the kitchen, quarreling; that he ordered them to cease the disturbance, and took hold of Ottis; that Dixie at the same time attempted to restrain Henry who broke away from her, and, either pushing or striking the defendant aside, attacked Ottis; that in the melee, Ottis knocked Henry to the floor and began to pommel him; that Lindsey, coming from an adjoining room, seized Ottis by the shoulders in an effort to stop the affray; whereupon Ruben attacked Lindsey with a razor, cutting him fourteen times and compelling him to run from the house; that he next attacked and cut Ottis, forcing him also to flee; that he then began slashing Henry, and when Dixie interfered, cut her on the arm; that Henry was so severely cut that he died in a few minutes; that Ruben later took his stand on the front porch, where Henry was dying, and, flourishing the razor, forbade anyone to come near; that there was no other weapon used or displayed except the razor in the hands of Ruben.

The uncorroborated story of the defendant is that when he ordered Henry and Ottis to stop quarreling in his house, Henry (with whom he had never had any

trouble) drew a knife, and someone struck him from the side knocking him against a mantel where his hand came in contact with the razor; that Henry desisted from the assault after defendant had struck him a few blows with the razor; and that he then turned to Blevins and Ottis, who were "pounding" him, and struck them with the razor; that he did not know how Dixie was cut; and sustained no injuries in the fight but thought his shirt was cut in two or three places.

The defendant was indicted September 9, 1935, and being without funds, R. H. Casto, a practicing attorney of Logan, was appointed, September 16th, as counsel to defend him in the case which was set for trial September 23rd. On the day fixed for trial, defendant, upon arraignment, pleaded not guilty and moved for a continuance because of the absence of Martin Gamble, an alleged material witness in his behalf, for whom a subpoena had been issued without avail. Evidence heard on the motion showed that Paul Perry and Martin Gamble had been admitted to the house by Ruben Chaney soon after the murder before anyone else entered; that directly after his visit to the house, Gamble delivered to his neice, Delphia Blevins, a long bladed pocket knife which he claimed to have picked up on the floor; that the knife was turned over to H. R. Shields, a member of the department of public safety; that the knife, the blade of which bore a small blood stain, had been misplaced by the officer and was not produced at the hearing of the motion or the trial. Paul Perry testified that he saw Gamble with the knife before they entered the house. The evidence also showed that Gamble was drunk at the time of entering the house and had made conflicting statements as to the room in which he picked up the knife. Officer Shields testified that Gamble, after visiting the house in which the homicide was committed, had stated on the same evening that he knew nothing about the case. The court refused a continuance but postponed the trial until October 14th. Defendant, through his counsel, did not secure any further subpoena for Gamble, but attempted

to reach him by letters addressed to him at six places in Kentucky and one in West Virginia where it was supposed he might be found. On October 14th, a motion for a continuance to the next term of court, on the same ground, was overruled and the trial proceeded. There was no appreciable evidence that the testimony of the absent witness could probably have been obtained at the next term of court. The defendant has been confined in jail since his arrest on the day of the homicide. Gamble was the only witness to the alleged finding of the knife.

On a motion to set aside the verdict, defendant assigned as grounds (1) the refusal of the motion for a continuance; (2) the insufficiency of the evidence to support the verdict; and (3) after-discovered evidence based upon the affidavit of Delphia Blevins to the effect that Napier, in an intoxicated condition some thirty minutes before the difficulty, said to her that some big son-of-a-bitch was going to die before night. She had visited the defendant in jail several times before the trial. The motion was overruled and judgment entered thereon, sentencing defendant to death.

The defendant now presents the same errors assigned on the motion to set aside the verdict as grounds for reversal.

In view of the conclusive nature of the evidence on the merits, there is no legal basis for reversal because of the insufficiency of the evidence to support the verdict. Likewise, owing to the indefinite character of the alleged after-discovered evidence, a new trial would not be warranted on that ground.

The jury was instructed concerning the elements constituting murder in the first and second degrees, but the record is silent as to whether they were advised of their authority under Code (1931) 62-3-15, to determine whether defendant, in event of his being found guilty of murder in the first degree, should be punished by death or confinement in the penitentiary for life. In *State* v. *Cobbs*, 40 W. Va. 718, 22 S. E. 310, this court

held that it was error for the trial court to refuse an instruction, offered after a verdict of murder in the first degree had been returned but before the discharge of the jury, informing them of their discretion under the statute. The case also holds by way of dictum that the court is not required, in the absence of a request, to give such instruction. Stressing the importance of the instruction refused, however, the court, in the opinion of the case, said: "Here is an instruction asked, properly stating the law, vitally important to the defendant, as on it perhaps hung his fate, refused." *State* v. *Beatty*, 51 W. Va. 231, 41 S. E. 434, raised the question as to whether it is the mandatory duty of the trial court without request to enlighten the jury in respect of their statutory discretion to fix the character of punishment for murder in the first degree, and held that the matter had been settled in the negative by the *Cobbs* case. The decision further held that if it was the duty of the trial court to give the instruction without request, the law would presume that this duty had been performed, in the absence of a contrary showing. It is said in the opinion of the case that there is no more reason why the court should of its own motion give an instruction on this question than on any other matter which may be a proper subject of instructions. At the time this case was written, instructions were not a part of the record unless made so by special bills of exception, and in the absence of an affirmative showing of error, the presumption of correctness would necessarily prevail. Under Code 1931, chapter 56, article 6, sections 19, 20, and 22, it is provided that all instructions, except those concerning matters not proper for jury consideration or concerning the conduct of persons in connection with the trial, must be in writing and are a part of the record. The presumption that all proper and necessary instructions in a case have been given is no more a part of our law. Generally, the imposition of the penalties, fixed by law in criminal cases, is within the discretion of the trial court. *Ex parte Fisher*, 95 W. Va. 397, 121 S. E.

287.. In murder of the first degree, the penalty, upon conviction, is death unless the jury elects to exercise its discretion by further finding that the accused be punished by imprisonment for life. A trial court upon a jury verdict of first degree murder has no discretion. Its duties are defined by statute and imposed by the verdict. The courts of Florida, Mississippi and South Carolina have held that the trial court is not required, in prosecutions for murder, without request, to charge the jury that they may fix the penalty for murder in the first degree by death or sentence in the penitentiary. *Metzger* v. *State,* 18 Fla. 481; *Denham* v. *State,* 22 Fla. 664; *Milton* v. *State,* 40 Fla. 251, 24 So. 60; *Webster* v. *State,* 47 Fla. 108, 36 So. 584; *Ferguson* v. *State,* 90 Fla. 105, 105 So. 840; *State* v. *Dodson,* 16 S. C. 453; *State* v. *Owens,* 44 S. C. 324, 22 S. E. 244; *State* v. *Adams,* 68 S. C. 421, 47 S. E. 676; *State* v. *Stalvey,* 146 S. C. 275, 143 S. E. 817; *Penn* v. *The State,* 62 Miss. 450. Other states have reached the opposite conclusion. *State* v. *Yomashita,* 51 Utah 170, 211 Pac. 360, holds that the failure of the trial court to charge the jury of their power to recommend life imprisonment, in a murder prosecution, constituted error. The statute of Utah provided: "Every person guilty of murder in the first degree shall suffer death, or, upon recommendation of the jury may be imprisoned at hard labor in the state prison for life in the discretion of the court." In *Calton* v. *Utah,* 130 U. S. 83, 9 S. Ct. 435, 436, 32 L. Ed. 870, involving the same statute, the United States Supreme Court held that a failure of the trial court to charge the jury as to their discretion in determining the nature of punishment deprived the prisoner of a substantial right, and said: "It is clear that the authority given in the section last quoted, to substitute imprisonment at hard labor in the peniteniary for life for the penalty of death, when the accused is found guilty of murder in the first degree, depends upon a previous recommendation to that effect by the jury. Without such recommendation, the court, in the absence of sufficient grounds for a new trial, has no al-

ternative but to sentence the accused to suffer death. While in this case the jury were instructed as to what constituted murder in the first and second degrees, they were not informed as to their right, under the statute, to recommend imprisonment for life at hard labor in the penitentiary in place of the punishment of death. If their attention had been called to that statute, it may be that they would have made such a recommendation, and thereby enabled the court to reduce the punishment to imprisonment for life." In *Vickers* v. *U. S.*, 1 Okla. Cr. 457, 98 Pac. 467, it was ruled that where the jury may, under the statute, qualify their verdict in murder or rape cases by adding "without capital punishment," it was the duty of the trial court to so instruct the jury no matter what the evidence may be. *Webb* v. *State*, 154 Ark. 67, 73, 242 S. W. 380, 382, presents a case where the Arkansas court, on re-hearing, reversed its original opinion and held that, under a statute which gave the jury power to reduce the punishment for murder in the first degree to life imprisonment, it was error for the trial court to fail to so instruct the jury. The Supreme Court of Pennsylvania has adopted the same rule under a statute similar to ours. *Commonwealth* v. *Madaffer*, 291 Pa. 270, 139 Atl. 875. Accord: Annotation, Ann. Cas. 1917 A, 752; 2 Thompson on Trials, section 2188; 30 C. J. 425, section 670. In view of the fact that the jury, and not the court, must determine whether an accused guilty of murder in the first degree shall be punished by death or confinement in the penitentiary, we are of opinion that the trial court erred in failing to advise the jury of their power in the premises. The rulings in *State* v. *Cobbs*, 40 W. Va. 718, 22 S. E. 310, and *State* v. *Beatty*, 51 W. Va. 231, 41 S. E. 434, in so far as they may be in conflict with this conclusion, are overruled.

For the reasons stated, we are of the opinion to reverse the judgment, set aside the verdict and award the defendant a new trial.

> *Judgment reversed; verdict set aside; new trial awarded.*