355 S.E.2d 913

**STATE of West Virginia**

v.

**James L. BARTLETT, II.**

**No. 17060.**

Supreme Court of Appeals of
West Virginia.

April 1, 1987.

Harry G. Deitzler, P.A., Parkersburg, for appellee.

William E. Kiger, Parkersburg, for appellant.

NEELY, Justice:

On the evening of 30 April 1984, the petitioner, James L. Bartlett, II, and his friends Stephanie Spindle and Laurine Tuell, became intoxicated at the home of Gerald L. Bartlett. At about 1:15 a.m. on 1 May 1984, while returning from Gerald Bartlett's home, petitioner drove his pickup truck into a telephone pole on East Street in Parkersburg. Stephanie Spindle was killed as a result of the collision. Petitioner was indicted on counts of speeding, reckless driving, driving under the influence of alcohol, involuntary manslaughter, and violations of *W. Va. Code*, 17C–5–2(a) [1983] and *W. Va. Code*, 17C–5–2(b) [1983], respectively the felony and misdemeanor provisions relating to the offense of driving under the influence of alcohol, which is a contributing cause of a fatality.[1]

Petitioner was tried in the Circuit Court of Wood County. Petitioner contended that he was run off the road by an oncoming vehicle and that he skidded on gravel and sand on the berm. The State introduced evidence that defendant was speeding and that defendant was not run off the road. The State's case was based on the contention that the speeding was the cause of the accident.

The jury returned a verdict of guilty on the charge of violating *W. Va. Code*, 17C–5–2(a) [1983]. On appeal, petitioner raises numerous counts of error, each of which

---

1. *W. Va. Code*, 17C–5–2 [1983] provides in pertinent part:

 (a) Any person who:

 (1) Drives a vehicle in this State while he is:

 (A) Under the influence of alcohol, or

 (B) Under the influence of any controlled substance, or

 (C) Under the influence of any other drug, or

 (D) Under the combined influence of alcohol and any controlled substance or any other drug, and

 (2) When so driving does any act forbidden by law or fails to perform any duty imposed by law in the driving of such vehicle, which act or failure proximately causes the death of any person within one year next following such act or failure, and

 (3) Commits such act or failure in reckless disregard of the safety of others, and when the influence of alcohol, controlled substances or drugs is shown to be a contributing cause to such death,

 (4) Shall be guilty of a felony, and, upon conviction thereof, shall be imprisoned in the penitentiary for not less than one nor more than three years and shall be fined not less than one thousand dollars nor more than three thousand dollars.

 (b) Any person who:

 (1) Drives a vehicle in this State while he is:

 (A) Under the influence of alcohol, or

 (B) Under the influence of any controlled substance, or

 (C) Under the influence of any other drug, or

 (D) Under the combined influence of alcohol and any controlled substance of any other drug, and

 (2) When so driving does any act forbidden by law or fails to perform any duty imposed by law in the driving of such vehicle, which act or failure proximately causes the death of any person within one year next following such act or failure,

 (3) Shall be guilty of a misdemeanor, and, upon conviction thereof, shall be imprisoned in the county jail for not less than ninety days nor more than one year and shall be fined not less than five hundred dollars nor more than one thousand dollars.

we find without merit. We therefore affirm.

## I

Petitioner contends initially that the trial court erred in failing to include in its jury charge defendant's proposed Instruction No. 5, which provided:

The driver of a motor vehicle is not liable either criminally or in a civil suit for unavoidable or inevitable accidents. The mere fact that an accident occurs which results in personal injury, death or property damage does not warrant a conviction of a criminal offense unless it is proven beyond a reasonable doubt that the injury or death was caused by the driver's reckless disregard of the safety of others. An unavoidable or inevitable accident is such an occurrence or happening as, under all the facts in circumstances, could not have been foreseen or anticipated in exercise of ordinary care as the proximate cause of the injury or death. In other words, where the accident did not occur as the result of the driver's reckless disregard of the safety of others and he could not have anticipated or foreseen the resulting accident, the accident is deemed to have been an unavoidable or inevitable accident for which no criminal liability attaches.

Therefore, if the jury and each member of the jury believe to even the slightest degree that the accident in which STEPHANIE SPINDLE was killed was unavoidable or inevitable and was not the result of the Defendant's reckless disregard of the safety of STEPHANIE SPINDLE then you may not convict the Defendant of the offenses charged in either COUNT ONE or COUNT TWO of the indictment.

The petitioner similarly contends that the trial court erred in excluding from its jury charge defendant's proposed Instruction No. 2 regarding the definition of the term "contributing cause", which provided:

The indictment in this case charges that the Defendant, at the time of the accident in which it is alleged that STEPHANIE SPINDLE was killed occurred, was operating a motor vehicle while under the influence of alcohol and that this was a contributing cause to the death of STEPHANIE SPINDLE. Before the jury may return a verdict of guilty as to either COUNT ONE or COUNT TWO of the indictment, the jury, and each member of the jury, must believe, beyond a reasonable doubt, that the Defendant was operating a motor vehicle while under the influence of alcohol at the time of the accident and that this was a contributing cause to the death of STEPHANIE SPINDLE.

The term contributing cause means that the Defendant's operation of a motor vehicle while under the influence of alcohol lead to and was one of the precipitating causes for the accident occurring. If the jury, and each member of the jury, believe that the accident would have occurred and the death of STEPHANIE SPINDLE would have occurred in spite of the Defendant having operated a motor vehicle while under the influence of alcohol then the jury should not find that the Defendant's operation of a motor vehicle while under the influence of alcohol was a contributing cause to the accident in which STEPHANIE SPINDLE was killed.

The definition of contributing cause given by the trial court provided:

The term contributing cause as used in these instructions means that the operation of a motor vehicle while under the influence of alcohol was one of the precipitating causes of the accident occurring and the resultant death of Stephanie Spindle.

The "unavoidable or inevitable accident" instruction was not an instruction the trial court was required to give. Saying that the accident was unavoidable or inevitable is merely another way of saying that the petitioner's misconduct was neither a proximate nor a contributing cause of the accident. The court instructed the jurors that, in order to convict the petitioner under W. Va. Code, 17C–5–2(a) [1983], they must find both that: (1) Mr. Bartlett's driving at a speed greater than was reasonable and

prudent under the circumstances *proximately caused* Stephanie Spindle's death; and, (2) Mr. Bartlett's intoxication was a *contributing cause* of Ms. Spindle's death.

 Petitioner sought to prove a lack of causation by eliciting testimony regarding the presence of sand and gravel on the shoulder of the road and the proximity of the telephone pole to the edge of the road. Petitioner also offered testimony that he was run off the road by another vehicle. However, this testimony was contradicted by testimony offered by the State, and the jury was entitled to draw its own conclusions based on the credibility of the witnesses and the weight of the evidence. In any event, the jury was clearly aware that the petitioner was seeking through this evidence to negate the element of causation. Counsel for the defense was permitted to argue extensively during closing statements that the accident would have occurred even had Mr. Bartlett not been intoxicated, and that, therefore, his intoxication could not have been a contributing cause of the death of Stephanie Spindle. Although the court was required to instruct the jury regarding every material element of the offense, *State v. Parks*, 161 W.Va. 511, 243 S.E.2d 848 (1978), the court was not required to paraphrase and recast an instruction that adequately set forth the causation requirements. As we held at Syl. pt. 4 of *State v. Johnson*, 157 W.Va. 341, 201 S.E.2d 309 (1973):

"Where instructions given clearly and fairly lay down the law of the case, it is not error to refuse other instructions on the same subject. The court need not repeat instructions already substantially given." Syl. pt. 4, *State v. Bingham*, 42 W.Va. 234, 24 S.E. 883 (1896).

 We find that the jury charge adequately set forth and defined the requirements of proximate and contributing causation. We therefore hold that the court did not err in refusing defendant's Instructions Nos. 2 and 5.

## II

Petitioner also contends that the trial court erred in failing to include in its jury charge his proposed Instruction No. 1 defining the term "reckless disregard for the safety of others." This proposed instruction provided:

The indictment in this case is charges of the Defendant acted, or failed to act, in reckless disregard for the safety of others when he was operating a motor vehicle on East Street in the City of Parkersburg, Wood County, West Virginia, during the early morning hours of May 1, 1984. In order for the jury to return a verdict of guilty as to the charges contained in COUNT ONE or COUNT TWO of the indictment the jury and each member of the jury must believe beyond a reasonable doubt that the Defendant did, in fact, act in reckless disregard for the safety of others.

The term reckless disregard for the safety of others requires proof of conduct indicating an entire absence of care for the safety of others which exhibits an indifference to the consequences of a persons actions. Such conduct is more than negligence or even gross negligence.

 We do not believe that the trial court's refusal to include this instruction in the charge denied petitioner a fair trial. We have never held that every term in a jury instruction must be defined, nor does the petitioner direct us to any authority requiring that the term in question be defined. "Reckless disregard" is not so arcane a term that the lack of a definitional instruction left the jury entirely without guidance. The jurors were informed that "reckless disregard" was a material element of the offense and that a finding of "reckless disregard" was a prerequisite to conviction under *W.Va.Code*, 17C–5–2(a) [1983]. The twelve jurors obviously reached a common understanding of what constitutes "reckless disregard", and agreed that the defendant's conduct fell within the ambit of that term. We cannot see that their verdict in this regard was clearly wrong. Accordingly, we find no error in the trial court's refusal to give defendant's Instruction No. 1.

### III

The petitioner further contends that the trial court erred in failing to direct a verdict of acquittal at the close of the evidence because the State had not presented any evidence of the speed at which Mr. Bartlett's vehicle was travelling at the time of the accident, nor had the State presented any evidence regarding what speed would have been reasonable and prudent under the conditions prevailing at the scene of the accident. But petitioner's contention is not supported by the evidence.

■ Witness Clark Simmons estimated the speed of Mr. Bartlett's vehicle to be approximately fifty or sixty miles per hour at the time of the accident. Witness Everett Freeland estimated the speed of the truck to be between sixty and eighty miles per hour. It was undisputed that there was a considerable amount of sand and gravel on the shoulder of the road where Mr. Bartlett lost control of the car. The accident occurred at night, and there was substantial evidence of Mr. Bartlett's considerable intoxication. Under these circumstances, there was sufficient evidence from which the jury could have inferred that Mr. Bartlett was driving at a speed that was not reasonable and prudent under the circumstances.

■ Petitioner also argues that the trial court erred in not directing a verdict of acquittal at the close of the State's case in chief because, the petitioner contends, the evidence presented by the State was insufficient to support the conviction. Specifically, petitioner argues that the State did not present any medical or scientific evidence regarding the affect the consumption of alcohol would have had on the petitioner's ability to operate a motor vehicle at the time of the accident, and therefore that the State failed to show that the petitioner's consumption of alcohol was a "contributing cause" to the accident and the resulting death of Stephanie Spindle. This contention is also without merit.

We take judicial notice of the fact that the ingestion of alcohol has an adverse affect on one's ability to drive. The State was not required to put on medical or scientific evidence of a causal link between the petitioner's intoxication and the accident. In this regard the State was required to prove only that the petitioner was intoxicated, that petitioner drove negligently, and that there was an accident. From this proof the jury could infer a causal link between the intoxication and the accident. The State introduced evidence that petitioner's breathalyzer test, administered shortly after the accident, revealed a blood alcohol content of 0.16%. Moreover, the petitioner conceded on the alcoholic influence report form that he was intoxicated at the time of the accident. The inference by the jury of a causal connection between the intoxication and the accident was therefore permissible.

### IV

Petitioner next argues that Instruction No. 1 was incomplete because it did not instruct the jury that petitioner could be convicted of the lesser included offense of violation of *W. Va. Code*, 17C–5–2(b) [1983], the misdemeanor version of *W. Va. Code*, 17C–5–2(a) [1983]. We held at Syl. pt. 2 of *Berkeley Homes, Inc. v. Radosh*, 172 W.Va. 683, 310 S.E.2d 201 (1983):

> If a party fails to offer an instruction regarding a particular point of law upon which he relies, he cannot later complain of the absence of such an instruction, there being no duty upon the court to so instruct the jury except when the error is so plain and the result so outrageous that the trial court must intervene to do substantial justice.

■ We noted in *Radosh* that, "[w]ith certain exceptions, this principle extends even to criminal cases." 172 W.Va. at 686, 310 S.E.2d at 203. As we held in Syl. pt. 5 of *State v. Cobbs*, 40 W.Va. 718, 22 S.E. 310, *overruled on other grounds, State v. Chaney*, 117 W.Va. 605, 186 S.E. 607 (1936):

> A court, though asked, is not bound to instruct a jury generally as to the law of the case. Instructions as to specific law points ought to be asked. A court may, without request, if it think the interest of

justice and a fair trial call for it, instruct the jury in matter of law, the instruction being sound in law and relevant to the evidence; but it is not bound to do so unless asked; but, if asked to give such proper specific instructions, it must do so.

■ Petitioner did not offer the court a proposed instruction on *W. Va. Code,* 17C–5–2(b) [1983]. Nor did petitioner object to the lack of an instruction on *W. Va. Code,* 17C–5–2(b) [1983]. The two elements of *W. Va. Code,* 17C–5–2(a) [1983] lacking in *W. Va. Code,* 17C–5–2(b) [1983] are reckless disregard for the safety of others and alcohol being a contributing cause to a death. Petitioner's principal defense to the charge of violating *W. Va. Code,* 17C–5–2(b) [1983] was his assertion that these two distinguishing elements were lacking. Evidence of intoxication, speeding, and the death of Stephanie Spindle would have been sufficient to convict under *W. Va. Code,* 17C–5–2(b) [1983]. The petitioner clearly made a strategic choice not to offer an instruction on *W. Va. Code,* 17C–5–2(b) [1983] in the hope that he would be convicted of nothing greater than driving under the influence of alcohol. This strategy was unsuccessful. The petitioner may not now claim that his own knowing and intelligent strategic maneuver denied him a fair trial. In the absence of a request by petitioner's counsel, the trial court was not obliged to give an instruction on *W. Va. Code,* 17C–5–2(b) [1983].

## V

Petitioner's next assignment of error arises out of an alleged inconsistency in the jury verdict. The jury found the petitioner not guilty of involuntary manslaughter, yet found him guilty of violating *W. Va. Code,* 17C–5–2(a) [1983]. The instruction given the jury on involuntary manslaughter provided:

> Involuntary manslaughter is committed when any person while operating a motor vehicle unintentionally kills another person as a proximate result of negligence so gross, wanton and culpable as to show a reckless disregard of human life.

The petitioner contends that, because the jury found him not guilty of involuntary manslaughter, they must have found that his conduct did not constitute "reckless disregard." Because "reckless disregard" is a material element of *W. Va. Code,* 17C–5–2(a) [1983], petitioner contends, the jury's acquittal of Mr. Bartlett on the involuntary manslaughter charge was by implication an acquittal on the charge of violating *W. Va. Code,* 17C–5–2(a) [1983]. We disagree.

■ We held in *State v. Hall,* 174 W.Va. 599, 328 S.E.2d 206 (1985), that we will generally not review claims of inconsistent jury verdicts. In so holding we followed the lead of the United States Supreme Court set forth in *United States v. Powell,* 469 U.S. 57, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984). In *Powell,* the Court unanimously concluded that appellate review of a claim of inconsistent verdicts is not generally available. The Court relied on its earlier case of *Dunn v. United States,* 284 U.S. 390, 393, 52 S.Ct. 189, 190, 76 L.Ed. 356, 358–59, 80 A.L.R. 161, 163 (1932), where Justice Holmes had written for the Court:

> "Consistency in the verdict is not necessary. Each count in an indictment is regarded as if it was a separate indictment. *Latham v. The Queen,* 5 Best & Smith 635, 642, 643. *Selvester v. United States,* 170 U.S. 262 [18 S.Ct. 580 42 L.Ed. 1029 (1898)]. If separate indictments had been presented against the defendant for possession and for maintenance of a nuisance, and had been separately tried, the same evidence being offered in support of each, an acquittal on one could not be pleaded as *res judicata* of the other. Where the offenses are separately charged in the counts of a single indictment the same rule must hold. As was said in *Steckler v. United States,* 7 F.(2d) 59, 60 [(1925)]:
>
> 'The most that can be said in such cases is that the verdict shows that either in the acquittal or the conviction the jury did not speak their real conclusions, but that does not show that they were not convinced of the defendant's guilt. We interpret the acquittal as no more

than their assumption of a power which they had no right to exercise, but to which they were disposed through lenity.' "

The Court in *Powell* went on to give a number of policy reasons why review is impractical.

The rule that the defendant may not upset such a verdict embodies a prudent acknowledgement of a number of factors. First, as the above quote suggests, inconsistent verdicts—even verdicts that acquit on a predicate offense while convicting on the compound offense—should not necessarily be interpreted as a windfall to the Government at the defendant's expense. It is equally possible that the jury, convinced of guilt, properly reached its conclusion on the compound offense, and then through mistake, compromise, or lenity, arrived at an inconsistent conclusion on the lesser offense. * * *

Finally, we note that a criminal defendant already is afforded protection against jury irrationality or error by the independent review of the sufficiency of the evidence undertaken by the trial and appellate courts. * * * The Government must convince the jury with its proof, and must also satisfy the courts that given this proof the jury could rationally have reached a verdict of guilty beyond a reasonable doubt. We do not believe that further safeguards against jury irrationality are necessary.

These policy considerations led the Court to conclude that:

The factors detailed above—the Government's inability to invoke review, the general reluctance to inquire into the workings of the jury, and the possible exercise of lenity—suggest that the best course to take is simply to insulate jury verdicts from review on this ground. 469 U.S. at 68, 105 S.Ct. at 479, 83 L.Ed.2d at 471. (Footnote omitted).

We went on to note in *Hall* that:

[a] number of state courts follow the rule that consistency between jury verdicts is not necessary and as a consequence appellate review of inconsistent verdicts is ordinarily not permitted. *E.g., State v. Martin*, 189 Conn. 1, 454 A.2d 256, *cert. denied*, 461 U.S. 933, 103 S.Ct. 2098, 77 L.Ed.2d 306 (1983); *Commonwealth v. Therrien*, 383 Mass. 529, 420 N.E.2d 897 (1981); *Commonwealth v. Shaffer*, 279 Pa.Super. 18, 420 A.2d 722 (1980); *State v. Leonardo*, 119 R.I. 7, 375 A.2d 1388 (1977); Annot., 18 A.L.R.3d 259 (1968); Annot., 16 A.L.R.3d 866 (1967).

We remain convinced by the logic of *Powell*, and therefore decline petitioner's invitation to reverse his conviction on the grounds of an inconsistent verdict. Furthermore, we believe in this case that the jury understood that the defendant could not be convicted both of involuntary manslaughter and a violation of *W.Va. Code*, 17C–5–2(a) [1983], because all the elements of involuntary manslaughter are contained in the offense of violating *W.Va. Code*, 17C–5–2(a) [1983]. The jury convicted on the greater offense and acquitted on the lesser included offense, and if the court had provided a clearer jury form that mental process would have been entirely obvious.

## VI

Finally, petitioner assigns three additional errors, each of which we find without merit. Petitioner contends that: (1) the trial court erred by admitting into evidence a statement made by the petitioner before he was fully advised of his *Miranda* rights; (2) the trial court erred in admitting into evidence the results of the breathalyzer test administered to the petitioner following his arrest because the test was not administered in accordance with the rules and regulations promulgated by the State Department of Health; and (3) the trial court erred in admitting into evidence the results of the breathalyzer test because the test procedure and results were not properly authenticated by the State of West Virginia.

When Officer Fluharty arrived at the scene of the accident, he asked Mr. Bartlett, before advising him of his *Miranda* rights, whether he was the driver of the truck. Petitioner answered in the affirma-

tive, and his response was admitted at trial over objection. Petitioner contends that admission of the statement constitutes reversible error.

Officer Fluharty testified at trial that Laurine Tuell had told him immediately after the accident that Mr. Bartlett had been the driver. Moreover, petitioner himself conceded at trial that he was driving at the time of the accident. On these facts, it is difficult to understand how petitioner could have been prejudiced by the admission of his earlier statement. Error not prejudicial to a defendant does not require reversal. *State v. Lane*, 168 W.Va. 490, 285 S.E.2d 138 (1981).

Petitioner does not specify how the administration of the breathalyzer test failed to comply with the rules and regulations promulgated by the State Department of Health; nor does he specify which rules or regulations were violated. Likewise, the petitioner does not apprise us of the manner in which the test procedure and results were improperly authenticated. In any event, it is again difficult to see how the petitioner was prejudiced by the introduction of the breathalyzer test results. The results were surely offered for the purpose of proving that the petitioner was under the influence of alcohol at the time of the accident. For this proposition there was ample independent proof. Petitioner testified at trial that he had imbibed three beers and possibly one or two shots of tequila just before the accident occurred. Moreover, the petitioner admitted on the alcohol influence report form that he had been under the influence of alcohol at the time of the accident. Given this separate proof of Mr. Bartlett's intoxication, any conceivable error in admitting the breathalyzer test results was not sufficiently prejudicial to require reversal. *State v. Lane, supra.*

For the foregoing reasons, the judgment of the Circuit Court of Wood County is affirmed.

Affirmed.