# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs.) No. 19-0959** (Calhoun County 18-F-15)

**Evan Lee Hersman,**
**Defendant Below, Petitioner**

**FILED**

**February 2, 2021**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Evan Lee Hersman, by counsel Roger L. Lambert, appeals the September 17, 2019, sentencing order of the Circuit Court of Calhoun County. Respondent State of West Virginia, by counsel Gordon L. Mowen, II, filed a response in support of the circuit court's order.

The Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On May 15, 2018, petitioner was indicted in the Circuit Court of Calhoun County on one count of first-degree murder, one count of first-degree robbery, and two counts of conspiracy to commit a felony, all related to the death of Eugene Stevens inside Mr. Stevens's home in the early morning hours of December 5, 2017. Petitioner was also indicted on one count of third-degree arson, one count of destruction of property, and two counts of conspiracy regarding the destruction of a 2003 red Ford Explorer after petitioner and his co-conspirators used the vehicle to travel to Mr. Stevens's residence on the morning of Mr. Stevens's death.[1]

---

[1]The Ford Explorer was previously reported stolen, and the State alleged that the vehicle was found burned following the other offenses charged in the indictment. Petitioner's co-conspirator, Jamie Lee Miller, was indicted on one count of possession of a stolen vehicle.

1

Petitioner's co-conspirators, who were charged in the same indictment as petitioner, were Jamie Lee Miller, Heather Davis, and Travis Sheldon Boggs. Mr. Boggs entered into a plea agreement with the State, pursuant to which Mr. Boggs pled guilty to one count of conspiracy to commit a felony and agreed to testify truthfully at the joint trial of petitioner, Mr. Miller, and Ms. Davis (collectively, "defendants" or "defense"). In exchange, the State agreed to dismiss all other charges against Mr. Boggs.[2]

The circuit court held the defendants' trial in February of 2019. During voir dire, the defendants moved that the circuit court strike four jurors from the jury panel, arguing that those jurors' answers indicated that they would not fully presume each defendant was innocent until proven guilty. The circuit court denied the motions, ruling that those jurors could be impartial if properly instructed. However, none of the four jurors served on the jury because they were removed through the defense's peremptory strikes.

At trial, Mr. Boggs testified that he had been staying at petitioner's residence in Lizemores, West Virginia, for approximately a month and a half. The night before the robbery, Mr. Boggs was using methamphetamine and sketching in petitioner's kitchen. Mr. Boggs had his wallet and identification with him. During the course of that evening, petitioner and Ms. Davis arrived at petitioner's house. Mr. Boggs later consented to go for a "ride somewhere."[3] Initially, petitioner and Mr. Boggs were in the Ford Explorer, and Mr. Miller and Ms. Davis were in another vehicle. However, the two vehicles stopped, and Mr. Miller and Ms. Davis got into the Ford Explorer. Mr. Boggs further testified that "about halfway there, . . . [he] found out that we was going to rob someone." Mr. Boggs did not object to the robbery plan because Mr. Miller had a gun and stated that he did not want to leave witnesses. Mr. Boggs learned that they were going to look for "[j]ewelry, money, and drugs." Mr. Boggs did not know who the group was going to rob, but heard the name "Eugene."[4] Mr. Boggs was given a face mask to wear. Petitioner also wore a face mask, and Mr. Miller had a toboggan.

Once at the victim's residence, petitioner, Mr. Miller, and Mr. Boggs got out of the Ford Explorer; Ms. Davis did not. Mr. Miller took the gun with him and knocked on the front door. No one answered. Mr. Miller then started pounding the door, and the victim, Mr. Stevens, opened the door. There was a brief conversation between Mr. Miller and Mr. Stevens. Mr. Boggs further testified that Mr. Miller "then pulled out the gun and shot [Mr. Stevens] three times." Mr. Stevens ran back inside the house. Petitioner, Mr. Miller, and Mr. Boggs followed Mr. Stevens into the residence. There, Mr. Stevens, who retrieved a gun, shot Mr. Boggs. Petitioner, Mr. Miller, and Mr. Boggs ran back outside the house and got back into the Ford Explorer without taking anything

---

[2]The charges dismissed against Mr. Boggs were one count of first-degree murder, one count of first-degree robbery, and one count of conspiracy to commit a felony.

[3]During Mr. Boggs's testimony, he did not identify which of the defendants asked him if he wanted to go for a ride.

[4]Ms. Davis knew Mr. Stevens, who was known to trade his prescription medication for sex with women.

from Mr. Stevens's home.[5] Thereafter, at approximately 4:50 a.m., the defendants "dumped" Mr. Boggs out of the Ford Explorer in front of the emergency entrance of Minnie Hamilton Hospital in Grantsville, West Virginia. Mr. Boggs did not have his wallet and identification with him at the hospital. Later, that day, Mr. Stevens was found dead in his home in Big Bend, West Virginia.[6] Subsequently, law enforcement discovered Mr. Boggs's wallet and identification during an authorized search of petitioner's residence.

In addition to Mr. Boggs's testimony, the State presented the testimony of various other witnesses including the members of the West Virginia State Police who investigated the case,[7] the physician who performed Mr. Stevens's autopsy, and a forensics firearm expert. Surveillance footage from security cameras found at Mr. Stevens's residence was also played for the jury. At the close of the State's evidence, the defendants made two motions for judgment of acquittal. With regard to the first motion for judgment of acquittal, the defendants argued that the State failed to present "any evidence" proving the counts based on the theft and destruction of the Ford Explorer. The circuit court granted the motion, finding that insufficient evidence was presented as to those counts. With regard to the second motion for judgment of acquittal, the defendants argue that one of the conspiracy counts relating to Mr. Stevens's death should be dismissed on double jeopardy grounds. The circuit court granted that motion, finding that the defendants had been charged with conspiracy twice in a case where the first-degree murder charge was based on a felony murder theory.

The charges remaining for the jury's consideration were one count of first-degree murder, one count of first-degree robbery, and one count of conspiracy to commit a felony. Following deliberations, the jury acquitted petitioner and Mr. Miller of first-degree murder, but found them guilty of first-degree robbery and conspiracy to commit a felony. The jury acquitted Ms. Davis of

---

[5]West Virginia Code § 61-2-12(a)(2) provides, in pertinent part, that "[a]ny person who commits or attempts to commit robbery by: . . . (2) us[ing] the threat of deadly force by the presenting of a firearm or other deadly weapon, is guilty of robbery in the first degree."

[6]While petitioner's Lizemores residence is in Clay County, Mr. Stevens's home in Big Bend is in Calhoun County.

[7]During his testimony, Cpl. Robert R. Cervera of the West Virginia State Police stated that, when he first arrived at petitioner's residence to execute a search warrant, petitioner declined to be interviewed by him. Contrary to petitioner's assertion on appeal, we find that this isolated comment by Cpl. Cervera does not warrant the reversal of his convictions as, upon petitioner's objection, the circuit court gave the jury the following curative instruction: "To the extent that the trooper has indicated that [petitioner] didn't want to speak, any individual has a right to not speak. You don't hold that against him; you cannot do that." *See* Syl. Pt. 3, *State v. Lusk*, 177 W. Va. 517, 354 S.E.2d 613 (1987) (holding that "[o]rdinarily where objections to questions or evidence by a party are sustained by the trial court during the trial and the jury instructed not to consider such matter, it will not constitute reversible error") (quoting Syl. Pt. 18, *State v. Hamric*, 151 W. Va. 1, 151 S.E.2d 252 (1966)).

first-degree murder and first-degree robbery, but found her guilty of conspiracy to commit a felony. At a July 31, 2019 sentencing hearing, the circuit court sentenced petitioner to fifty years of incarceration for first-degree robbery and one to five years of incarceration for conspiracy. The circuit court ordered that the sentences run consecutively.[8]

It is from the circuit court's September 17, 2019, sentencing order that petitioner appeals. "On an appeal to this Court[,] the appellant bears the burden of showing that there was error in the proceedings below resulting in the judgment of which he complains, all presumptions being in favor of the correctness of the proceedings and judgment in and of the trial court." Syl. Pt. 1, *White v. Haines*, 215 W. Va. 698, 601 S.E.2d 18 (2004) (quoting Syl. Pt. 2, *Perdue v. Coiner*, 156 W. Va. 467, 194 S.E.2d 657 (1973)).

On appeal, petitioner argues that the circuit court erred in allowing four jurors to remain on the jury panel after those jurors' answers indicated that they would not fully presume each defendant was innocent until proven guilty. The State counters that this issue is without merit given petitioner's failure to argue that he was prejudiced by the circuit court's denial of the defense's motions to strike the jurors for cause. We agree with the State.

In Syllabus Point 3 of *State v. Sutherland*, 231 W. Va. 410, 745 S.E.2d 448 (2013), we held that:

> [a] trial court's failure to remove a biased juror from a jury panel, as required by W. Va. Code § 62-3-3 (1949) (Repl.Vol.2010), does not violate a criminal defendant's right to a trial by an impartial jury if the defendant removes the juror with a peremptory strike. In order to obtain a new trial for having used a peremptory strike to remove a biased juror from a jury panel, a criminal defendant must show prejudice. The holding in Syllabus point 8 of *State v. Phillips*, 194 W.Va. 569, 461 S.E.2d 75 (1995), is expressly overruled.

Here, petitioner concedes that the four jurors that the circuit court refused to strike for cause were subsequently removed from the jury panel using his preemptory strikes. Petitioner does not argue that the use of the defense's preemptory challenges in this manner prejudiced him in any way. Therefore, we conclude that petitioner fails to show that the assignment of error is meritorious.

Petitioner further argues that the evidence was insufficient to support his convictions for first-degree robbery and conspiracy to commit a felony. We review challenges to the sufficiency of the evidence under the following standards:

> The function of an appellate court when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at

---

[8] Mr. Miller was sentenced at the same time as petitioner. Mr. Miller also received consecutive sentences of fifty years of incarceration for first-degree robbery and one to five years of incarceration for conspiracy to commit a felony. Mr. Miller is appealing his convictions in Supreme Court No. 19-0956.

4

trial to determine whether such evidence, if believed, is sufficient to convince a reasonable person of the defendant's guilt beyond a reasonable doubt. Thus, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt.

. . . .

A criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. Credibility determinations are for a jury and not an appellate court. Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt. . . .

Syl. Pts. 1 and 3, *State v. Guthrie*, 194 W. Va. 657, 461 S.E.2d 163 (1995).

Petitioner argues that the forensic evidence presented at trial contradicted Mr. Boggs's testimony that only Mr. Miller had a gun. Petitioner asserts that "the forensic evidence established that [Mr.] Stevens was actually confronted by two shooters" and that "[Mr.] Boggs minimized his role as a gunman in the home invasion." In addition, as Mr. Stevens was involved in frequent disputes with his girlfriends' other partners,[9] petitioner asserts that "the defense presented a plethora of other credible suspects to the jury" for the robbery and murder of Mr. Stevens. Accordingly, petitioner argues that no rational jury could have found him guilty beyond a reasonable doubt. The State counters that it was the jury's—not this Court's—function to weigh the evidence and determine the credibility of witnesses. We agree with the State.

In *Guthrie*, we noted that "[a]n appellate court may not decide the credibility of witnesses or weigh evidence as that is the exclusive function and task of the trier of fact" and that "[o]nce the jury has spoken, this Court may not review the credibility of the witnesses." *Id.* at 669 n.9, 461 S.E.2d at175 n.9. Here, the jury heard the evidence regarding other potential suspects, the forensic evidence, and Mr. Boggs's testimony as to the circumstances of the robbery and murder. Based on our review of the trial transcript, we find that the jury did not need to determine the number of gunmen in order to convict petitioner. In addition, Mr. Boggs testified extensively as to the fact that he obtained the dismissal of several charges against him in exchange for his testimony at petitioner's trial on the condition that it be truthful testimony. Therefore, given the testimony and the evidence heard by the jury at trial, we conclude that a rational jury could find petitioner guilty

---

[9]*See* fn.4

of first-degree robbery and conspiracy to commit a felony.[10]

For the foregoing reasons, we affirm the circuit court's September 17, 2019, sentencing order.

Affirmed.

**ISSUED:** February 2, 2021

**CONCURRED IN BY:**

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton

---

[10]Petitioner notes that, even though the State proceeded on a felony murder theory with regard to the first-degree murder charge, the jury acquitted him of that charge despite finding him guilty of the underlying felony offense of first-degree robbery. Petitioner argues that such a "split" verdict "makes no logical sense." We decline to address this argument pursuant to Syllabus Point 5 of *State v. Bartlett*, 177 W. Va. 663, 355 S.E.2d 913 (1987), in which we held that "[a]ppellate review of a claim of inconsistent verdicts is not generally available." (Internal quotations and citations omitted).