# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**FILED**
**December 15, 2023**

EDYTHE NASH GAISER, CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**DEBRA SHANTIE,**
**Respondent Below, Petitioner**

**vs.)    No. 22-ICA-287    (Cir. Ct. Kanawha Cnty. 22-AA-31)**

**PUTNAM COUNTY BOARD OF EDUCATION,**
**Petitioner Below, Respondent**

## MEMORANDUM DECISION

Petitioner Debra Shantie appeals from the October 31, 2022, *Final Order* of the Circuit Court of Kanawha County, which reversed the decision of the West Virginia Public Employees Grievance Board ("Grievance Board").[1] Respondent Putnam County Board of Education ("Board of Education") filed its response.[2] Ms. Shantie filed a reply. The issue on appeal is whether the circuit court erred by reinstating the Board of Education's termination of Ms. Shantie's employment.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2022). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Ms. Shantie was employed by the Board of Education as a full-time bus operator from April 12, 2000, until her termination on May 11, 2020. The events which led to her termination are as follows.

All school buses in Putnam County are equipped with multiple video cameras. One of those cameras is located behind the bus driver to record the driver's actions while they are driving. The cameras can show the date, time, and the bus's rate of speed. In early March of 2020, Mr. Clark, Director of Transportation for Putnam County Schools, pulled

---

[1] Because the Grievance Board decision was entered on May 16, 2022, the circuit court retained jurisdiction over the administrative appeal. *See* W. Va. Code § 51-11-4 (2021) (giving this Court jurisdiction over final administrative orders entered after June 30, 2022).

[2] Ms. Shantie is represented by Andrew J. Katz, Esq. The Board of Education is represented by George "Trey" B. Morrone III, Esq., and Joshua A. Cottle, Esq.

1

some of the video recordings from Ms. Shantie's bus for review to determine if she had overreported her hours on a timesheet.[3]

Through his review, Mr. Clark discovered multiple instances between February 18, 2020, and March 3, 2020, where Ms. Shantie was observed using her cellphone while operating her bus. Mr. Clark reported his findings, along with the recommendation of termination to the Board of Education's Superintendent, Mr. Hudson. By letter dated March 10, 2020, Mr. Hudson informed Ms. Shantie that she was being placed on a paid suspension while an investigation was completed into her cellphone use and the inaccurate timesheets. This paid suspension was unanimously ratified by the Board of Education during a meeting on April 6, 2020.

On April 16, 2020, Mr. Hudson met with Ms. Shantie, her union representative, and counsel for the Board of Education regarding the investigation and to discuss potential disciplinary action. The parties reviewed the bus camera footage showing Ms. Shantie using her cellphone while operating her bus. During this meeting, Ms. Shantie admitted that she knew cellphone use was prohibited but justified her conduct by stating that "85% of the other bus operators engage in the same or similar conduct."

By certified letter dated April 23, 2020, Mr. Hudson notified Ms. Shantie, in extensive detail, that the investigation had been completed, and as a result, she was being suspended without pay, effective immediately.

This letter stated that upon review of the bus video footage, it was determined that Ms. Shantie had committed several policy violations while operating her bus. The dates associated with her misconduct were identified as February 18-20, 2020, February 25, 2020, February 27-28, 2020, and March 2-3, 2020. On these dates Ms. Shantie used her cellphone while operating her bus, several times per day, including at times when children were present. She also failed to stop at a stop sign, failed to open the school bus door at a railroad crossing, removed both hands from the steering wheel to fix her hair, and was observed to be either speeding or driving left of center on multiple occasions. The letter also stated that Ms. Shantie acknowledged this conduct during the April 16, 2020, meeting, but attempted to diminish the seriousness of the conduct and denied that it raised any safety issues.

---

[3] *See* W. Va. Code R. § 126-92-10.23.a.1 (2020), in part:

A bus video may be reviewed at any time by the State Director, [West Virginia Department of Education ("WVDE")] bus inspector, WVDE investigator, WVDE[,] and/or county attorney, county director, and the county superintendent for reasons including but not limited to: safety violations or misconduct, violation of policies and procedures, operator evaluation, periodic review of student conduct, etc.

In his letter, Mr. Hudson also informed Ms. Shantie that each of the described incidents violated provisions of the West Virginia Board of Education ("WVBE") and local Board of Education policies. Specifically, under the West Virginia School Bus Transportation Regulations and Procedures established under West Virginia Code of State Rules §§ 126-92-1 to -28 ("WVBE Policy 4336"), Ms. Shantie was observed to have violated: West Virginia Code of State Rules § 126-92-10.25.a (2020) (prohibiting a school bus operator's use of cellphones and other electronic devices while operating the bus); West Virginia Code of State Rules § 126-92-10.25.b (2020) (prohibiting bus operator use of cellphones while loading and unloading students); West Virginia Code of State Rules § 126-92-10.6 (2020) (mandating bus operators observe all speed limits); West Virginia Code of State Rules § 126-92-12.7 (2020) (setting forth railroad crossing protocol); and West Virginia Code of State Rules § 126-92-21-1.j (2020) (generally stating that failure to follow traffic laws, regulations, or ordinances while operating school bus is basis for suspension, revocation, or non-renewal of bus operator's certification).

Ms. Shantie's conduct was also found to have violated Board of Education Policy 9.15, which required school bus operators to comply with WVBE Policy 4366, and that she had violated the Employee Code of Conduct as set forth under West Virginia Code of State Rules §§ 126-162-1 to -6 (2002) ("WVBE Policy 5902") and adopted by Board of Education Policy 4.9. WVBE Policy 5902 requires, for example, that employees "demonstrate responsible citizenship by maintaining a high standard of conduct, self-control, and moral/ethical behavior," and to "comply with all Federal and West Virginia laws, policies, regulations, and procedures." W. Va. Code R. § 126-162-4.2.6 and -4.2.7. According to Mr. Hudson's letter, Ms. Shantie had previously received training regarding these policies, including the prohibition on cellphone use. Citing these violations, Mr. Hudson informed Ms. Shantie that at the upcoming May 11, 2020, Board of Education meeting, he would recommend that her employment be terminated.

At the May 11, 2020, meeting, the Board of Education ratified Ms. Shantie's April 23, 2020, unpaid suspension, and voted to terminate her employment, effective immediately. Ms. Shantie's termination was based upon her misconduct as outlined in Mr. Hudson's April 23, 2020, letter.

Thereafter, Ms. Shantie exercised her right to a level three hearing before the Grievance Board. The hearing was held on November 9, 2021, and December 21, 2021. Before the Grievance Board, the Board of Education argued that its decision to suspend, and subsequently terminate Ms. Shantie, was proper because she violated various safety policies, procedures, and traffic laws. It was the Board of Education's belief that this conduct endangered the safety of students and the public, which constituted insubordination and willful neglect of duty under West Virginia Code § 18A-2-8(a) (2019).[4]

---

[4] West Virginia Code § 18A-2-8(a) provides:

The Grievance Board issued its order on May 16, 2022. Significant to this appeal are the Grievance Board's findings regarding Ms. Shantie's cellphone use. On that issue, the Grievance Board found:

> The video clips establish that [Ms. Shantie] repeatedly touched her cellphone's screen and handled the phone throughout her runs on the days in question. [Ms. Shantie] can be seen doing this in every video clip presented by [the Board of Education]. [The Board of Education] has not asserted that these clips are the only recordings from these days, or that they show [Ms. Shantie]'s entire workday. These video clips are taken from longer recordings. In each clip, [Ms. Shantie]'s cellphone can be seen sitting in the bus windowsill to her left. [Ms. Shantie] is not seen talking on her cellphone or using it to text. [The Board of Education] has asserted that in one clip [Ms. Shantie] appears to be texting while the bus is stopped and students are loading, but [the Grievance Board] cannot discern that from the recording. It is undisputed that in some clips, [Ms. Shantie] can be observed with her cellphone in hand, apparently scrolling down on its screen when the bus is stopped and/or students are [unloaded/loaded]. However, [the Grievance Board] cannot determine with certainty, what [Ms. Shantie] is doing on her phone.
>
> [Ms. Shantie] argues that she was using her phone as both a clock and a radio, but not using the telephone and texting applications. [Ms. Shantie] explained that she had to touch her cellphone's screen periodically because the screen will go dark when it is not in active use, and by touching it with her finger, the screen lights up allowing her to see the time. [Ms. Shantie] asserts the same is true of the radio application. A review of the clips, all of which have audio, establishes that [Ms. Shantie] is not using her phone to call anyone or to have conversations via any handsfree technology. It is noted that in some of the videos, music can be heard playing in the background. [Ms. Shantie]

---

(a) Notwithstanding any other provisions of law, a board may suspend or dismiss any person in its employment at any time for: Immorality, incompetency, cruelty, insubordination, intemperance, willful neglect of duty, unsatisfactory performance, a finding of abuse by the Department of Health and Human Resources in accordance with § 49-1-1 *et seq*. of this code, the conviction of a misdemeanor or a guilty plea or a plea of nolo contendere to a misdemeanor charge that has a rational nexus between the conduct and performance of the employee's job, the conviction of a felony or a guilty plea or a plea of nolo contendere to a felony charge.

4

contends that this is not cellphone "use" as prohibited by the policy, and if it were, she did not know it.

Regarding Ms. Shantie's argument that the nature of her cellphone use was not prohibited, the Grievance Board determined that the term "use" was undefined by the WVBE Policy 4336. The Grievance Board found that nowhere in the Policy was it stated that cellphones are prohibited on buses, even when not in use, nor did the Policy state that any violation would result in an automatic termination of employment. Thus, the Grievance Board concluded that Ms. Shantie's possession of a cellphone did not violate the Policy. Addressing WVBE Policy 4336, the Grievance Board stated:

> The policies at issue are somewhat vague as to what constitutes cellphone "use." The fact that cellphones have evolved into so much more than a telephone does not help matters. In addition to "cellular phones," Policy 4336 prohibits operators from using "other portable electronic devices" while operating their buses. Using a cellphone as a radio would seem to fit that description, but even if it did not, [Ms. Shantie]'s actions as captured by the bus camera, should be the main concern. From a review of the video clips, it is obvious that [Ms. Shantie] could not keep her hands off her phone while she was operating the bus. [Ms. Shantie] repeatedly touched her phone while driving, and when the bus stopped, she would pick it up and use it with both hands. [Ms. Shantie] can also be seen grabbing at her phone when it appears poised to fall from the windowsill, and in that clip, [Ms. Shantie] goes left of center as a result. [The Grievance Board] does not doubt that [Ms. Shantie] was using the phone as a radio because much can be heard on the recordings. Nor does [the Grievance Board] doubt that [Ms. Shantie] was using [her cellphone] as a clock because the time is prominently displayed on almost all smartphone home screens. However, no matter what [Ms. Shantie] was using her cellphone to do, it distracted her, and it affected her driving.

Despite finding that Ms. Shantie's cellphone use distracted her driving, the Grievance Board also found that Ms. Shantie's actions "did not result in any injuries to anyone, traffic accidents, damage to the bus or to other vehicles, any citations, or any damage to property." After considering the evidence presented, the Grievance Board concluded:

> [The Board of Education] failed to prove by a preponderance of the evidence that [Ms. Shantie]'s actions as described [in the April 23, 2020, letter] constitute insubordination and willful neglect of duty. As such, [the Board of Education]'s decision to terminate [Ms. Shantie]'s employment contract was not justified. [The Board of Education] proved that [Ms. Shantie] violated Policy 4336 by taking her hands off the steering wheel while operating her bus, driving left of center, failing to follow the proper procedures for railroad

5

crossings, and for using a portable electronic device while operating her bus, all of which are related to [Ms. Shantie]'s performance as a bus operator and are correctable conduct. [Ms. Shantie] was entitled to an opportunity to improve her performance before her employment contract was terminated. [The Board of Education] failed to prove by a preponderance of the evidence that [Ms. Shantie] exceeded the speed limit while operating her bus, that she failed to stop at two stop signs, and that [Ms. Shantie] was texting while operating her bus. Accordingly, this grievance is GRANTED.

The Grievance Board reinstated Ms. Shantie's employment and awarded her back pay. The Board of Education appealed this decision to the Circuit Court of Kanawha County. On October 31, 2022, the circuit court entered its *Final Order*, which reversed and vacated the Grievance Board's decision, denied Ms. Shantie's grievance, and affirmed her termination.

In its order, the circuit court rejected the Grievance Board's conclusion that Ms. Shantie was entitled to have her employment reinstated based upon its determination that WVBE Policy 4336 was ambiguous. Instead, the circuit court found that there was no reason to "overly complicate the definition of 'use' regarding a cell[phone]," and that a strict legal definition of the term was not required when "any individual can readily identify when someone uses a cell[phone]." The circuit court further found that the Grievance Board made several findings related to its determination that Ms. Shantie did, in fact, use her cellphone while operating the bus. This included the Grievance Board's express finding that Ms. Shantie's cellphone use "distracted her, and it affected her driving." The circuit court determined that the plain language of WVBE Policy 4336 clearly prohibited any cellphone use by Ms. Shantie while operating her school bus, and that the Grievance Board's conclusion that Ms. Shantie's cellphone use did not violate the Policy was clearly wrong.

The circuit court also found that the Grievance Board erred in its conclusion that Ms. Shantie's termination was not warranted because her conduct was correctable. The circuit court found that the Grievance Board had misinterpreted *Mason Cnty. Bd. of Educ. v. State Superintendent of Schools*, 165 W. Va. 732, 274 S.E.2d 435 (1980) to stand for the proposition that an individual's conduct is automatically correctable when the conduct impacts his or her professional competency. Instead, the circuit court found that *Mason* sets forth that when determining whether a school employee's conduct is correctable, a reviewing court must decide "whether [the conduct] directly and substantially affects the morals, safety, and health of the system in a permanent, non-correctable manner." *Mason*, 165 W. Va. at 739, 274 S.E.2d at 439.

On this issue, the circuit court determined that Ms. Shantie's conduct was not correctable, and, thus, she was not entitled to an improvement plan. The circuit court concluded that as a matter of law, an individual is not entitled to an improvement plan if

6

the offending conduct impacts the health or safety of others, and that the Grievance Board expressly found that Ms. Shantie's cellphone use resulted in multiple instances of distracted driving.

The circuit court found that distracted driving inherently posed a severe threat to others, and in this case, Ms. Shantie's distracted driving threatened the health, safety, and welfare of her bus passengers and the public. Thus, it concluded that her conduct was not correctable, and the Board of Education could terminate her employment without first offering an improvement plan. The circuit court also rejected the Grievance Board's rationale that Ms. Shantie's termination was unreasonable because there had been no injuries or property damage due to distracted driving. Instead, the circuit court opined that the Board of Education did not have to wait on tragedy before taking action to fulfill its obligation to protect its students. This appeal followed.

In this appeal, we apply the following standard of review:

> A party may appeal the decision of the administrative law judge on the grounds that the decision:
> (1) Is contrary to law or a lawfully adopted rule or written policy of the employer;
> (2) Exceeds the administrative law judge's statutory authority;
> (3) Is the result of fraud or deceit;
> (4) Is clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or
> (5) Is arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

W. Va. Code § 6C-2-5(b) (2007); *accord* W. Va. Code § 29A-5-4(g) (2021) (specifying the standard for appellate review of administrative appeal); Syl. Pt. 1, *Martin v. Barbour Cnty. Bd. of Educ.*, 228 W. Va. 238, 719 S.E.2d 406 (2011) (when a reviewing Grievance Board appeal, this Court reviews a circuit court's decision under the same standard that the circuit court reviewed the administrative decision).

On appeal, Ms. Shantie asserts two assignments of error, and we will address each in turn.[5] First, Ms. Shantie argues that the circuit court erred by finding no ambiguity in

_____

[5] Ms. Shantie's brief fails to contain several sections mandated by Rule 10 of our Appellate Rules. Specifically, the brief fails to contain a cover page, table of contents, table of authorities, assignment(s) of error, statement of the case, summary of argument, and a statement regarding oral argument and decision. Ms. Shantie's brief largely contains sections/headings not expressly authorized by Rule 10 and fails to cite to the appendix record. Further, Ms. Shantie's reply brief fails to conform with the requirements for such briefs under Rule 10(g) of our Appellate Rules. Also, the parties' joint appendix fails to

7

the term "use", as used within WVBE Policy 4336. On this issue, Ms. Shantie asserts that the circuit court's finding that the Policy prohibits any use of a cellphone is unworkable because under that rationale, the utilization of a cellphone as a paperweight would constitute a "use", and, thus, would violate the Policy. We disagree and find that the circuit court did not err in its finding that the Policy was unambiguous.

Under WVBE Policy 4336, "[t]he use of ear pieces, ear buds, headsets, cellular phones, or other portable electronic devices, even those equipped with hands-free technology, is prohibited for operators while operating the bus and by aides while students are present." W. Va. Code R. § 126-92-10.25.a. As written, we find that this Policy plainly establishes that school bus operators are prohibited from engaging in the use of any cellphone or other electronic devices while operating his or her bus. We are unpersuaded by Ms. Shantie's attempt to impute ambiguity by comparing the use of her cellphone as clock and radio to the use of a cellphone as a paperweight. As our state's highest court has made clear, "[a] term which is widely used[,] and which is readily comprehensible to the average person without further definition or refinement need not have a defining instruction." Syl. Pt. 2, *State v. Bartlett,* 177 W. Va. 663, 664, 355 S.E.2d 913, 914 (1987). Given this Policy's plain language, we find the term "use" to be widely used and its meaning to be readily comprehensible to the average person. As such, we decline to find ambiguity in that regard.

Ms. Shantie's final assignment of error rests on whether the circuit court erred by finding her conduct uncorrectable. Here, she argues that she was entitled to an improvement plan because her cellphone use was correctable conduct under *Mason*. According to Ms. Shantie, all she must do to correct her conduct is to abstain from any future cellphone use while operating her bus. Ms. Shantie also believes that the circuit court exaggerated the seriousness of her conduct given the Grievance Board's finding that her distracted driving did not result in any accidents or injuries. We are unpersuaded by either argument. Upon review, we find that the circuit court properly analyzed Ms. Shantie's conduct under *Mason* and determined that her conduct was not technically correctable.

West Virginia Code § 18A-2-8(a) states, in part, that "[n]otwithstanding any other provisions of law, a board may suspend or dismiss any person in its employment at any time for: Immorality, incompetency, cruelty, insubordination, intemperance, willful neglect of duty, [or] unsatisfactory performance[.]" Pursuant to West Virginia Code § 18A-2-8(d):

> A county board of education has the duty and authority to provide a safe and
> secure environment in which students may learn and prosper; therefore, it
> may take necessary steps to suspend or dismiss any person in its employment

---

contain a table of contents as required by Rule 7(c)(3) of our Appellate Rules. All counsel are directed to comply with the requirements of our Rules of Appellate Procedure in all future filings with this Court.

at any time should the health, safety, and welfare of students be jeopardized[,] or the learning environment of other students has been impacted.

Further, under WVBE Policy 5300(6)(a):

Every employee is entitled to know how well he is performing his job and should be offered the opportunity of open and honest evaluation of his performance on a regular basis. Any decision concerning promotion, demotion, transfer or termination of employment should be based upon such evaluation, and not upon factors extraneous thereto. Every employee is entitled to the opportunity of improving his job performance prior to the terminating or transferring of his services and can only do so with assistance of regular evaluation.

W. Va. Code R. § 126-141-2.6 (1993).[6] Addressing this policy our Supreme Court of Appeals held:

Failure by any board of education to follow the evaluation procedure in West Virginia Board of Education Policy No. 5300(6)(a) prohibits such board from discharging, demoting[,] or transferring an employee for reasons having to do with prior misconduct or incompetency that has not been called to the attention of the employee through evaluations, and which is correctable.

Syl. Pt. 3, *Trimboli v. Bd. of Educ. of Wayne Cnty.*, 163 W. Va. 1, 254 S.E.2d 561 (1979).

The Board of Education's performance evaluation procedure is not an issue in this appeal. Instead, the issue before us rests solely on whether Ms. Shantie's conduct was correctable, thereby warranting an improvement plan. In determining whether an employee's conduct is correctable for purposes of an improvement plan, our state's highest court has held:

It is not the label given to conduct which determines whether [WVBE Policy] 5300(6)(a) procedures must be followed but whether the conduct forming the basis of dismissal involves professional incompetency and whether it directly and substantially affects the system in a permanent, noncorrectable manner.

*Mason*, 165 W. Va. at 733, 274 S.E.2d at 436, syl. pt. 4. In other words, the determination is whether "the conduct complained of involves professional incompetency and whether it

---

[6] This legislative rule was recently amended and recodified under West Virginia Code of State Rules § 126-141-3.6 (2022). However, the above-cited version was in effect at the time of Ms. Shantie's termination.

directly and substantially affects the morals, safety, and health of the system in a permanent, non-correctable manner." *Id.*, 165 W. Va. at 739, 274 S.E.2d at 439; *see also Holland v. Bd. of Educ. of Raleigh Cnty.*, 174 W. Va. 393, 395, 327 S.E.2d 155, 157 (1985) (applying WVBE Policy 5300(6)(a) and finding "[a]s we noted in [*Mason*], it is the conduct forming the basis for action and not the label placed upon such action that is determinative.").

Below, the circuit court determined that Ms. Shantie's conduct was uncorrectable because her cellphone use resulted in distracted driving and that the Grievance Board had made the same finding regarding her cellphone use. The circuit court found that Ms. Shantie's cellphone use created a severe threat to the health, safety, and welfare of Ms. Shantie's passengers and the public. As a result, the circuit court concluded that Ms. Shantie could be terminated without first receiving an improvement plan. We agree.

A county board of education has a duty to provide a safe and secure environment for its students, and it may dismiss an employee at any time whose conduct endangers the health, safety, and welfare of students. W. Va. Code § 18A-2-8(d). We find that this was precisely the action the Board of Education took in this case. Here, Ms. Shantie's cellphone use and subsequent distracted driving with children present is uncontroverted. Moreover, Ms. Shantie's distracted driving resulted in her going left of center, speeding, failing to stop at a stop sign, and failing to follow railroad crossing protocol. Even more troubling is that these were not isolated incidents.

We reject Ms. Shantie's argument that she can correct her conduct by abstaining from using her cellphone in the future. We also reject her contention that the circuit court over-exaggerated the seriousness of her conduct. Instead, we find these arguments reflect the same attitude and lack of concern Ms. Shantie exhibited about her conduct during her April 16, 2020, meeting with Board of Education officials. We find that Ms. Shantie's cellphone use clearly posed a threat to the health, safety, and welfare of her passengers and others. We further find Ms. Shantie's conduct to be exactly the type of conduct that "directly and substantially affects the morals, safety, and health of the [public school] system in a permanent, non-correctable manner." *Mason*, 165 W. Va. at 739, 274 S.E.2d at 439. As such, we conclude that the circuit court correctly found Ms. Shantie's conduct was uncorrectable and that it did not err by reinstating her termination.

Accordingly, we find no error and affirm the circuit court's October 31, 2022, *Final Order*.

Affirmed.

**ISSUED:** December 15, 2023

10

**CONCURRED IN BY:**
Chief Judge Daniel W. Greear
Judge Thomas E. Scarr
Judge Charles O. Lorensen